# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 12, 2013

Lyle W. Cayce
Clerk

No. 12-41175

STEVE MOORE; RUBEN PENA; RONALD E. GANER; RUSSELL EDLIN;
CIRIACO VILLARREAL, JR., et al.,

Plaintiffs–Appellants,

versus

CITGO REFINING AND CHEMICALS COMPANY, L.P.,

Defendant–Appellee.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

No. 12-41292

STEVE MOORE; RUBEN PENA; RONALD E. GANER; RUSSELL EDLIN;
CIRIACO VILLARREAL, JR.; RUDY RAMIREZ;
MICHAEL JOHN WEDGEL; ROBERT G. GARCIA; JERRY DAVILA;
CRAIG SIGMOND CORLEY; ROLAND V. GUZMAN;
RUDOLFO R. MARTINEZ; RONALD D. STUBBS; LUIS R. GALVAN, II;
CHARLES JOHN BREIDENBACH; DAVID BELLOWS; DAVID D. RUIZ;
DONALD HEDRICK; ROBERT SCOTT; WILLIAM F. WAGGONER, JR.;
JAIME REQUENEZ; EDUARDO MARTINEZ, SR.; GREGORY G. SMITH;
RICK G. SALINAS; DIANA G. REDDELL; CHESTER HARRISON,

Plaintiffs–Appellees,

versus

CITGO REFINING AND CHEMICALS COMPANY, L.P.,

Defendant–Appellant.

---

Appeals from the United States District Court
for the Southern District of Texas

---

Before SMITH, DENNIS, and HIGGINSON, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Console supervisors at a refinery alleged that their employer, CITGO Refining and Chemicals Company, L.P. ("CITGO"), misclassified them as exempt from the overtime pay requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219.  In two separate discovery sanctions, the district court dismissed twenty-one of twenty-four plaintiffs.[1]  After granting CITGO's motion to exclude testimony regarding damages by the three remaining plaintiffs, the court granted summary judgment for CITGO based on plaintiffs' inability to prove damages; the court, however, reduced CITGO's award of taxable costs.  We affirm the summary judgment but reverse and render the award of costs.

I.

CITGO served plaintiffs with requests for discovery and interrogatories. After CITGO alleged that plaintiffs' responses were deficient, the district court entered its first discovery order, requiring plaintiffs to produce documents and respond to interrogatories.  CITGO again complained of plaintiffs' continued non compliance, whereupon the court entered a second discovery order requiring

---

[1] Initially, twenty-six plaintiffs sued; the district court dismissed two who had abandoned their claims.  This appeal concerns only the twenty-four remaining plaintiffs.

No. 12-41175
No. 12-41292

plaintiffs to preserve documents, respond to specific interrogatories, and produce documents. The court scheduled an evidentiary hearing and warned that "[p]laintiffs who are found to have violated this Court's Order to preserve their notes and/or documents, will have their claims dismissed."

After two evidentiary hearings that included live testimony from eighteen plaintiffs, the court concluded that seventeen of them "had failed to participate in discovery, failed to properly supplement responses, and failed to preserve documents." Pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(v), the court dismissed the claims of all seventeen as a discovery sanction.[2]

CITGO moved for summary judgment on the merits, contending that the seven remaining plaintiffs were exempt from the overtime-pay requirements of the FLSA pursuant to the exemptions for administrative, executive, combination, and highly compensated employees; and that liability, if any, must be calculated pursuant to the fluctuating-workweek method and was subject to a two-year statute of limitations. The court did not rule on CITGO's summary-judgment motion before four additional plaintiffs were dismissed for further discovery violations.

As part of its second discovery order, the court instructed plaintiffs to "produce either: (1) the emails that are responsive to Interrogatory No. 16 and/or Request for Production No. 41; or (2) a list of all of their respective personal email addresses, along with the relevant account names and passwords. . . . ." Further, "[i]f any Plaintiff deletes any of his personal emails after the date of the

---

[2] Rule 37(b)(2)(A)(v) provides, in relevant part, that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders . . . includ[ing] . . . dismissing the action or proceeding in whole or in part . . . ."

No. 12-41175
No. 12-41292

entry of this Order, the Court will impose on that Plaintiff a monetary sanction
of one hundred dollars ($100) for each deleted email."

Among the plaintiffs who elected to disclose their email accounts and pass-
words, three deleted emails notwithstanding the order, and a fourth made no
effort to preserve the contents of his inbox.  Following a further evidentiary
hearing, the court gave the offending plaintiffs the option of "either: (1) dismissal
of their claims against CITGO with prejudice; or (2) . . . monetary sanctions . . . .
Plaintiffs elected to dismiss their claims against CITGO with prejudice."

Giving no reasons, the court denied CITGO's motion for summary judg-
ment as to the three remaining plaintiffs.  It then granted CITGO's motion to
prevent those plaintiffs from testifying at trial about damages, because "after
over a year of discovery, not one Plaintiff has yet to provide CITGO with any cal-
culation or estimation of the damages he is seeking."  *See* FED. R. CIV. P. 37(b)-
(2)(A)(ii).  Plaintiffs, moreover, had failed timely to designate an expert on dam-
ages, and the court had denied their motion to designate out of time.

Because plaintiffs had no way of proving an essential element, CITGO's
ensuing motion for summary judgment on damages was unopposed.  The district
court granted that motion, dismissed plaintiffs' claims with prejudice, and
entered final judgment in favor of CITGO.  Although CITGO submitted a bill of
costs for more than $50,000,[3] the court awarded only $5000, based in part on a
finding of CITGO's "enormous wealth" and plaintiffs' "limited resources."

Both parties appeal.  Plaintiffs contend that the district court erred by
(1) entering discovery sanctions dismissing seventeen plaintiffs (the "January

---

[3] CITGO requested $53,065.72 for deposition transcripts and $2,262.41 for copies.  The
court denied reimbursement for the latter, a ruling that CITGO does not appeal.

4

No. 12-41175
No. 12-41292

Sanction"); (2) entering discovery sanctions dismissing four additional plaintiffs (the "March Sanction"); and (3) dismissing the three remaining plaintiffs after preventing them from testifying about damages.  CITGO (4) re-urges its motion on the merits as an alternative ground for summary judgment against the final three plaintiffs and (5) avers that the court erred by reducing its cost award.

## II.

"A district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (internal quotation omitted).  "The district court's underlying findings of fact are reviewed for clear error and its underlying conclusions of law reviewed de novo." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (internal quotation marks omitted).

Because plaintiffs do not allege a *legal* error, i.e., it is undisputed that the district court applied the correct test; the only question is whether it clearly erred in its findings of fact.  "Clear error review is especially rigorous when we review a lower court's assessment of trial testimony, because the trier of fact has seen and judged the witnesses." *In re Eldercare Props., Ltd.*, 568 F.3d 506, 515 (5th Cir. 2009) (internal quotation marks omitted).

Rule 37(b)(A)(v) expressly contemplates dismissal, and the district court's discretion thereunder is broad. *Bluitt v. Arco Chem.*, 777 F.2d 188, 191 (5th Cir. 1985).  "The courts have consistently demonstrated their willingness to impose the ultimate sanction of dismissal or default." GREGORY P. JOSEPH, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE § 49(B)(4), at 729 (5th ed. 2013) (citation

No. 12-41175
No. 12-41292

omitted).  "[D]ismissal is a severe sanction that implicates due process." *FDIC v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994).  Rule 37 dismissal, however "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam).

"The question . . . is not . . . whether the Court of Appeals [ ] would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing." *Id*. at 642.  The Court's Rule 37 dismissal guidance is but a specific application of its general instructions regarding clear error review:  "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74 (1985).

> [S]everal factors ["*Conner* factors"] must be present before a district court may dismiss a case with prejudice as a sanction for violating a discovery order: (1) "the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct;" (2) the violation of the discovery order must be attributable to the client instead of the attorney, (3) the violating party's misconduct "must substantially prejudice the opposing party;" and (4) a less drastic sanction would not substantially achieve the desired deterrent effect.

*Doe v. Am. Airlines*, 283 F. App'x 289, 291 (5th Cir. 2008) (per curiam) (quoting *Conner*, 20 F.3d at 1380–81); *accord* GREGORY P. JOSEPH, *supra*, § 49(B)(4),

6

No. 12-41175
No. 12-41292

at 740 (quoting *Conner*, 20 F.3d at 1380–81).

After hearing two days of testimony and making specific findings regarding each of eighteen plaintiffs (January Sanction), the court addressed each factor in detail. As a preliminary matter, plaintiffs contend that an alleged ambiguity in the second discovery order deprived them of "fair notice that their claims were subject to dismissal at the evidentiary hearing." They cite no authority for that proposition, and notice is not among the *Conner* factors governing dismissal. As a factual matter, moreover, the order was unambiguous: "Plaintiffs who are found to have violated this Court's Order to preserve their notes and/or documents, will have their claims dismissed." The court made specific findings, moreover, that each and every dismissed plaintiff failed to preserve documents.

Plaintiffs maintain that their violation of the discovery order was only negligent. The district court, however, inferred wilfulness from conduct: "Plaintiffs were aware of the Court's rulings, and nevertheless failed to conduct themselves in accordance with them. This failure evidences a blatant disregard for the judicial process, and constitutes willful and contumacious conduct."

The court did not abuse its discretion by refusing to credit, following substantial testimony, plaintiffs' claims that their disobedience was grounded in confusion or sincere misunderstanding. Their failure to request clarification of the order militates against such a finding. *See Worrell v. Hous. Can! Academy*, 424 F. App'x 330, 337 (5th Cir. 2011) (per curiam). Even if such a reading is plausible, the district court's opposite conclusion—reached after a detailed examination of each plaintiff's conduct—was not implausible. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574.

7

No. 12-41175
No. 12-41292

Plaintiffs assert that their failure to preserve handwritten notes and personal emails did not substantially prejudice CITGO. Plaintiffs testified that their work notes contained information that was not available in electronic records or elsewhere. It was therefore not clear error for the district court to conclude that "the notes Plaintiffs routinely destroyed or failed to preserve would have been the best evidence of their daily tasks." (January Sanction.)

Although conceding it possessed information regarding the duration of plaintiffs' internet use, CITGO asserts those records are not accurate proxy for how much time was spent on personal email while on the clock. The district court specifically found, however, that "emails go directly to two of Defendant's defenses" (January Sanction), and CITGO's prospective trial exhibits included more than twenty emails from the one then-remaining plaintiff who used personal email at work. The prejudice finding was not clearly erroneous.

Plaintiffs contend that dismissal was improper because a less drastic sanction would have achieved the desired effect. They rely primarily on district court and out-of-circuit cases, but this circuit has rejected the view that a court is "required to attempt to coax [parties] into compliance with its order by imposing incrementally increasing sanctions." *United States v. $49,000 Currency*, 330 F.3d 371, 379 (5th Cir. 2003).

The district court dismissed the seventeen plaintiffs only after issuing two discovery orders, one of which specifically warned that dismissal would be the penalty for noncompliance. The court, moreover, entered specific factual findings regarding each plaintiff—and, notably, did not dismiss one plaintiff whom it found to be in compliance. (January Sanction.) On this record, we find no

No. 12-41175
No. 12-41292

abuse of discretion, notwithstanding the severity of the sanction.[4]

Discovery rulings—especially those taken after live testimony—are pecul-iarly within the competence of the district court, and the factual findings at issue here are no exception.  Plaintiffs' briefing does not focus on (or even distinguish) their individual courses of conduct, as the district court did, so their claim must be that the district court got it wrong regarding *all seventeen dismissed plain-tiffs*.  That is an implausible result, given the plaintiff-specific findings and care-ful application of each *Conner* factor to the facts.  We therefore affirm the Jan-uary Sanction.

III.

In its March Sanction, the district court dismissed four additional plain-tiffs who disclosed their personal email addresses and passwords after the sec-ond discovery order but then either deleted emails or, in the case of one plaintiff, failed to preserve inbox contents.  The dismissal again occurred after live testi-mony, plaintiff-specific findings, and application of the *Conner* factors.

There was no abuse of discretion.  Three plaintiffs deleted emails in direct

---

[4] *See Emerick v. Fenick Indus., Inc.*, 539 F.2d 1379, 1381 (5th Cir. 1976) ("It is not our responsibility as a reviewing court to say whether we would have chosen a more moderate sanction.  It is our responsibility solely to decide whether the district court could, in its discre-tion, have determined the appellant's conduct to be so flagrant as to justify [the sanctions at issue].");  *see also Nat'l Hockey League,* 427 U.S. at 643 ("It might well be that [t]hese [plain-tiffs] would faithfully comply with all future discovery orders entered by the District Court in this case.  But other parties to other lawsuits would feel freer than we think Rule 37 contem-plates they should feel to flout other discovery orders of other district courts.  Under the cir-cumstances of this case, we hold that the District Judge did not abuse his discretion in finding bad faith on the part of these respondents, and concluding that the extreme sanction of dismis-sal was appropriate in this case . . . .").

No. 12-41175
No. 12-41292

contradiction of an order—and despite dismissal of their co-plaintiffs, in part, for similar conduct—and a fourth thwarted the order through inaction.

Plaintiffs again attribute their conduct to negligence or misunderstanding rather than wilfulness. The district court, however, characterized that explanation as "particularly disingenuous and offensive in light of the fact that seventeen co-plaintiffs were previously dismissed raising these same tired excuses." The plaintiffs had at least constructive notice of the second discovery order; allowing parties to avoid sanctions by not reading documents in their own case would erode courts' ability to enforce their lawful edicts. The implicit finding of wilfulness was not clearly erroneous.

To the extent plaintiffs have preserved a claim that their noncompliance did not prejudice CITGO, the court did not abuse its discretion by finding that "[t]he discovery that was destroyed by plaintiffs may have been essential to CITGO's defense, and without it, CITGO is certainly disadvantaged. Moreover, CITGO has expended considerable funds in pursuing discovery that has led nowhere."

Particularly unpersuasive, in the context of the March Sanction, is plaintiffs' contention regarding a lesser sanction. Plaintiffs *elected* dismissal with prejudice in lieu of the very sanction they now seek ($100 per deleted email). They did not challenge that choice at the time and will not now be heard to repudiate it. The four plaintiffs dismissed in the March Sanction, moreover, were not in fact deterred by either the discovery orders or the earlier dismissal of seventeen co-plaintiffs for similar conduct. There is no showing that any lesser sanction would have been effective.

10

No. 12-41175
No. 12-41292

IV.

The district court made three significant determinations regarding damages. The court denied the request of the seven remaining plaintiffs to designate a damages expert out of time. It subsequently barred the final three plaintiffs from testifying to damages. Summary judgment on damages followed.

It is somewhat unclear which of these issues, if any, plaintiffs have preserved on appeal. Our independent review of the record shows that neither the denial of plaintiffs' untimely motion to designate an expert nor the discovery sanction preventing their direct testimony on damages was an abuse of discretion.

At most, plaintiffs' initial brief could be generously construed as a compound argument that the two rulings on damages, followed by summary judgment, erroneously prohibited them from presenting evidence of damages. Although plaintiffs have explained *why* they failed timely to designate an expert (which failure they concede), they have not shown that the denial of their motion to do so after the deadline was reversible error. There is no evidence, other than plaintiffs' *ipse dixit*, that the court ordered an off-the-record "stand-down" on discovery or that such stand-down, even if ordered, tolled the deadline for designating an expert.

The subsequent order barring plaintiffs from testifying about damages is a sanction that is expressly permitted by Federal Rule of Civil Procedure 37(b)-(2)(A)(ii). Whether the district court abused its discretion in deploying it is determined by examining "(1) the importance of the witnesses' testimony; (2) the prejudice to the opposing party of allowing the witnesses to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explana-

No. 12-41175
No. 12-41292

tion, if any, for the party's failure to comply with the discovery order." *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 572 (5th Cir. 1996).

In applying the *Sierra Club* factors, the court determined that there was no good explanation for plaintiffs' delay in providing damages calculations and that allowing testimony without discovery would prejudice CITGO.[5] That "evidence of damages is an essential element of Plaintiffs' FLSA claims" militates in favor of allowing it, notwithstanding any discovery violations. The court made no explicit finding regarding a continuance, though we note that the trial was continued for eight months after denial of plaintiffs' motion to designate an expert out of time.

Considering them holistically, the *Sierra Club* factors weigh in favor of a finding that the court did not abuse its discretion. Especially important is that, "after over a year of discovery, not one Plaintiff ha[d] yet . . . provide[d] CITGO with any calculation or estimation of . . . damages"—"despite the fact that they had in their possession . . . badge records and the Court had specifically informed Plaintiffs that they could provide their 'best estimate.'"

CITGO's eventual motion for summary judgment on damages was unopposed, and the district court found no remaining issues of material fact. Having consented to the judgment, plaintiffs cannot challenge it for the first time on appeal. *See Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988).[6]

---

[5] *See also* FED. R. CIV. P. 37(c)(1) (barring introducing of undiscovered information into evidence unless failure to disclose was harmless or justified).

[6] Because we affirm the discovery sanctions and summary judgment, we do not reach (continued...)

12

No. 12-41175
No. 12-41292

V.

"Unless a federal statute, the [Federal Rules], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1).  "Because the Rule authorizes the district court to deny the award, we review that exercise of authority for abuse of discretion." *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006).  It follows that a reduction in a cost award is likewise reviewed for abuse of discretion.

In *Pacheco*, the court cited a leading treatise for the proposition that "[a] wide range of reasons have been invoked to justify withholding costs from the prevailing party."  *Id.* at 794 (citation and internal quotation marks omitted). The court enumerated illustrative reasons, but "only for the purpose of exposition."  *Id.* at 794 n.18.  It expressly declined to "decide whether *any* of these is a sufficient reason to deny costs."  *Id.* (emphasis added).

Although it is undisputed that CITGO is the prevailing party, the district court reduced CITGO's cost award based on (1) a finding of plaintiffs' good faith, (2) CITGO's "enormous wealth," and (3) "Plaintiffs['] limited resources."  The court erred as a matter of law in relying on CITGO's "enormous wealth"—or the comparative wealth of the parties—as a basis for reducing the cost award. Neither the district court nor plaintiffs have invoked any Fifth Circuit authority other than *Pacheco*'s descriptive list.  At least four circuits, however, have rejected a "relative wealth" rationale, and "[t]he fact that the prevailing party

---

[6](...continued)

the alternative grounds proffered by CITGO. We decline to consider whether the district court erred by denying CITGO's initial motion for summary judgment on the merits, because plaintiffs were properly classified as exempt under the FLSA.

No. 12-41175
No. 12-41292

is substantially more wealthy than the losing party is not a sufficient ground for denying or limiting costs to the prevailing party."[7]

> [T]he plain language of Rule 54(d) does not contemplate a court basing awards on a comparison of the parties' financial strengths. To do so would not only undermine the presumption that Rule 54(d)(1) creates in prevailing parties' favor, but it would also undermine the foundation of the legal system that justice is administered to all equally, regardless of wealth or status.

*Cherry*, 186 F.3d at 448.

Thus, Congress did not intend Rule 54(d) to be swallowed by an "enormous" or "relative" wealth exception: As a practical matter, the approach adopted by the district court would be impermissibly punitive by preventing profitable corporations such as CITGO from recovering costs when litigating against individuals acting in good faith. Consistent with the great weight of authority from the federal circuits, reducing or eliminating a prevailing party's cost award based on its wealth—either relative or absolute—is impermissible as a matter of law.

It is not entirely evident whether the district court intended plaintiffs' "limited resources" to be an independent basis for the cost reduction or whether,

---

[7] 10 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 54.101[1][b], at 54–156 (3d ed. 2013); *accord In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 468 (3d Cir. 2000) (stating that disparities in wealth may not be considered); *Smith v. Se. Pa. Transp. Auth.*, 47 F.3d 97, 99–100 (3d Cir. 1995) (per curiam) (holding that plaintiff's limited resources did not justify reduction of cost award where plaintiff is able to pay); *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 447–48 (4th Cir. 1999) (stating that comparitive economic power is not a factor regarding presumption that prevailing party recovers its costs); *Reed v. Int'l Union of Auto., Aerospace, & Agric. Implement Workers, Local Union No. 663*, 945 F.2d 198, 204 (7th Cir. 1991) (declaring that financial disparity is no basis to deny costs); *Chapman v. AI Transp.*, 229 F.3d 1012, 1038–39 (11th Cir. 2000) (en banc) (reasoning that court should not consider relative wealth of parties).

No. 12-41175
No. 12-41292

instead, it was a dependent part of a comparative-wealth analysis. In any event, we recognize that some circuits have permitted alteration of a cost award based on a combined finding of good faith and limited resources.[8] The parties agree, however, that the question of what role "limited resources" play in reducing an award presents a question of first impression in the Fifth Circuit.

On these facts, we decline to disturb the careful balance established by the Federal Rules, which provide that taxable costs are presumptively awarded to the prevailing party. Where, as here, the prevailing party incurred a few thousand dollars per plaintiff in carefully documented out-of-pocket expenses for taking depositions, and those plaintiffs were making in the neighborhood of $100,000 per year, it would have been reversible error for the district court to reduce the cost award based on a finding of "limited resources."[9]

The summary judgment is AFFIRMED. The order reducing costs is REVERSED, and a cost award is RENDERED in favor of CITGO for $53,065.72.

---

[8] E.g., *Moore v. Cnty. of Delaware*, 586 F.3d 219, 221–22 (2d Cir. 2009); *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003); *Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir. 1983).

[9] This conclusion regarding "limited resources" has no bearing on whether a losing party who has demonstrated indigency may properly be excused from paying a prevailing party's costs or may properly be permitted to pay reduced costs. *See* 10 JAMES W. MOORE ET AL., *supra*, § 54.101[1][b], at 54–157 ("Most circuits hold that a substantiated claim of the losing party's indigency may justify a reduction . . . of costs . . . ."). As their attorney conceded at oral argument, plaintiffs are not indigent, nor did the district court make a finding to that effect.

No. 12-41175
No. 12-41292

DENNIS, Circuit Judge, concurring in part and dissenting in part.

I concur in Parts II and III of the majority's opinion, holding that the district court did not abuse its discretion by sanctioning Plaintiffs whom it found had repeatedly and willfully violated discovery orders. I likewise join the majority's conclusion in Part IV that the district court did not abuse its discretion by excluding the Plaintiffs' testimony on damages, denying the untimely designation of an expert on damages, and ultimately granting summary judgment for CITGO. However, I respectfully dissent from Section V of the majority opinion because I believe the district court was well within its discretion to reduce CITGO's cost award based on the circumstances of this case and the comparatively disparate financial resources of the parties.

## I.

Pursuant to Federal Rule of Civil Procedure 54(d), a district court may award costs to a prevailing party. An appellate court reviews a district court's cost award under a deferential abuse–of–discretion standard. *Energy Mgmt. Corp. v. City of Shreveport*, 467 F.3d 471, 483 (5th Cir. 2006). A district court that denies or reduces a cost award to a prevailing party must articulate justifications for so doing. *Id.* ("[I]f the court does not award costs to the prevailing party, we require the district court to state its reasons." (quoting *Salley v. E.I. DuPont de Nemours & Co.,* 966 F.2d 1011, 1017 (5th Cir. 1992)).

In *Pacheco v. Mineta*, 448 F.3d 783 (5th Cir. 2006)*,* this court held that in conjunction with a finding that the non-prevailing party brought suit in good faith, district courts may consider various factors to determine what, if any, costs should be awarded to the prevailing party. The *Pacheco* factors include: "(1) the

No. 12-41175
No. 12-41292

losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources." *Id.* at 794 (citing 10 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2668, at 234 (1998)). As noted by the majority, this Court in *Pacheco* explained in a footnote that the five enumerated factors were listed "only for the purpose of exposition. [We did not] decide whether any of these is a sufficient reason to deny costs." *Id.* at 794 n.18.

## II.

After final judgment was entered in CITGO's favor, CITGO filed a motion seeking costs of approximately $53,000. On November 26, 2012, the district court issued an opinion, awarding CITGO $5,000 in costs. The district court applied *Pacheco* and found that despite the discovery disputes in this case, there was no record evidence to conclude that Plaintiffs filed suit in bad faith. The court further found that although the issues were in dispute, they were "neither novel or complex." The district court then considered the resources of the parties, finding that CITGO has "enormous wealth" and that Plaintiffs have "limited resources." Because of the disparity in financial resources between the parties, the court found that the amount of costs "requested by CITGO would amount to an additional sanction, and is not appropriate." Furthermore, the court noted, in its discussion of attorneys' fees, that four Plaintiffs had previously elected to dismiss their claims against CITGO rather than incur monetary sanctions. "Those Plaintiffs voluntarily elected dismissal of their claims, and as such avoided imposition of a monetary sanction. . . . The dismissal of their claims adequately addressed the proven discovery violations."

17

No. 12-41175
No. 12-41292

### III.

Looking to case law from four sister-circuits, the majority opinion concludes that "reducing or eliminating a party's cost award based on its wealth—either relative or absolute—is impermissible as a matter of law." I respectfully disagree that a consideration of the parties' financial resources is impermissible as a matter of law. Rather, our very own case law under *Pacheco*, the text of Federal Rule of Civil Procedure 54(d)(1), as well as persuasive case law from three sister-circuits suggest otherwise.

First, this court in *Pacheco* indicated that a comparative wealth analysis may be a proper means for reducing or denying costs to the prevailing party. After *Pacheco* was announced, this court and district courts in our circuit have adopted these five factors as instructive in guiding the district court's discretion in assigning costs. *See, e.g.*, *Wade v. Peterson*, 416 F. Appx 354, 356 (5th Cir. 2011) ("[I]n this circuit, courts may, but are not required to excuse a losing party from paying costs only if he brought suit in good faith *and* can demonstrate at least one of the five factors set forth in *Pacheco v. Mineta,* 448 F.3d 783, 794 (5th Cir. 2006). . . . "); *Frischhertz v. SmithKline Beechan Corp.*, No. 10-2125, 2013 WL 3894021 (E.D. La. July 26, 2013) (finding that "[i]f the court excuses the losing party from paying costs, it must explain its reasons for doing so. In order to do so, the litigant must have brought their claim in good faith and be able to demonstrate at least one of five factors, discussed below." (citing *Pacheco,* 448 F.3d at 794) (citation omitted)).

Second, as noted by the majority opinion, Federal Rule of Civil procedure 54(d)(1) states: "Unless a federal statute, the [Federal Rules of Civil Procedure], *or a court order* provides otherwise, costs—other than attorney's fees—should be

18

No. 12-41175
No. 12-41292

allowed to the prevailing party." Relying on the reasoning of a Fourth Circuit opinion, the majority suggests that the plain language of the Rule establishes a strong presumption in favor of awarding costs, and thus district courts should not be permitted to decline to award costs on the basis of the relative–wealth exception. Although I do not dispute that the text of the Rule presumes that costs will be awarded to prevailing parties, the majority cannot ignore that the Rule also expressly contemplates that a court may simply order otherwise. Given the explicit discretion granted to district courts by the Rule, I fail to see how we can read into it a prohibition against considering the parties' financial means.

Third, the majority misleadingly asserts that the "great weight of authority from the federal circuits" compels the conclusion that a comparative–wealth analysis is impermissible as a matter of law. As the majority notes, the Third, Fourth, Sixth, and Eleventh Circuits reject a comparative–wealth analysis in assessing costs. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000); *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 448 (4th Cir. 1999); *Smith v. Se. Penn. Transp. Auth.*, 47 F.3d 97, 99-100 (3d Cir. 1995); *White & White, Inc. v. Am. Hosp. Supply Corp.,* 786 F.2d 728, 730 (6th Cir. 1986). However, the Second, Eighth, and Ninth Circuits expressly permit consideration of the comparative–wealth of the parties. *See Moore v. Cnty. of Del.*, 586 F.3d 219, 221-222 (2d Cir. 2009) ("While we do not and need not compile an exhaustive list of those factors here, denial of costs may be appropriate where a losing party can demonstrate misconduct by a prevailing party, the public importance of the case, the difficulty of the issues presented, or its *own limited financial resources*.") (emphasis added); *Champion Produce, Inc. v. Ruby Robinson Co.,* 342 F.3d 1016, 1022 (9th Cir. 2003) ("We have previously

19

No. 12-41175
No. 12-41292

approved as appropriate reasons for denying costs: (1) a *losing party's limited financial resources*; (2) misconduct by the prevailing party; and (3) 'the chilling effect of imposing . . . high costs on future civil rights litigants.'") (emphasis added) (alteration in original); *Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1157 (8th Cir. 1983) ("The district court's order indicates that the trial judge considered Cross's limited financial resources[] . . . . In so doing, the district court did not abuse its discretion."); *see also Poe v. John Deere Co.*, 695 F.2d 1103, 1108 (8th Cir. 1982) ("It is of course within a court's discretion to deny costs because a plaintiff is poor or for other good reason[] . . . ."). Thus, there is no "great weight of authority," as the majority contends. Rather, whereas four circuits reject the comparative–wealth analysis, three permit it, and, additionally, two sister circuits allow for a narrow indigency exception for costs.[1]

Moreover, I fear that the majority's rule will prohibit district courts from considering the relative wealth of the parties, consequently chilling potential bona fide claims by plaintiffs who lack disposable income. *See, e.g.*, *Ass'n of Mex.- Am. Educators v. California*, 231 F.3d 572, 593 (9th Cir. 2000) *(*"[D]ivesting district courts of discretion to limit or to refuse such overwhelming costs in important, close, but ultimately unsuccessful civil rights cases like this one might have the regrettable effect of discouraging potential plaintiffs from

---

[1] The Seventh and Tenth Circuits allow for a narrowly construed indigency exception, permitting district courts to deny costs when the non-prevailing party presents sufficient evidence of indigency. *Johnson v. Okla. ex rel. Univ. of Okla. Bd. of Regents*, 229 F.3d 1163 (10th Cir. 2000) (unpublished); *Corder v. Lucent Tech. Inc.*, 162 F.3d 924, 929 (7th Cir. 1998). Although the indigency exception is distinct from a comparative–wealth analysis, I believe the Seventh and Tenth Circuit case law on this issue is relevant for this discussion in that it indicates that these circuits are likewise willing to address the parties' limited financial resources in determining cost awards.

No. 12-41175
No. 12-41292

bringing such cases at all.").

## IV.

The district court here did not abuse its discretion when it applied the language from Fifth Circuit precedent to reduce CITGO's costs. As noted, the district court found that there was no evidence to suggest that the suit was not brought in good faith, and thus went on to apply the *Pacheco* factors*,* comparing the great economic wealth of CITGO—a large corporation with over nine billion dollars of assets—with the comparatively limited resources of the losing Plaintiffs. The court further justified its reduction of fees and costs by explaining that substantial sanctions were already imposed upon the Plaintiffs in the form of dismissals and exclusion of testimony and that, therefore, any additional sanction in the form of costs or fees, imposed upon these Plaintiffs of "modest means," would have been unjust. Furthermore, the court reasoned that four Plaintiffs had voluntarily elected to avoid monetary sanctions in favor of dismissal, and thus should not be straddled with both dismissal of their claims and additional costs.

Accordingly, I would affirm the district court's reduced cost award, and dissent from the majority's contrary opinion.